the same, and transacting business therein." By the second section of the third article of the constitution of the United States, it is declared, "that the judicial power of the United States shall extend to all cases in law and equity arising under this constitution, the laws of the United States and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors and other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states; between a state and citizens of another state; between citizens of different states; between citizens of the same state, claiming lands under grants from different states; and between a state or citizens thereof, and foreign states, citizens, or subjects." The exercise of these judicial powers is, by the first section of the same article, vested "in one supreme court, and in such inferior courts as congress may from time to time ordain and establish." That portion of jurisdiction intended for the supreme court, is not left to be assigned by congress; but is bestowed upon it by the same article. As to the residue of the judicial powers, that was to be distributed amongst the inferior courts which congress might establish, in such proportions as that body, in its wisdom, should think best. The first judiciary act passed by congress, in the year 1789, created two courts, the circuit and district, within each state, on each of which a certain portion of the judicial authority was conferred. To the circuit courts was assigned original cognizance, concurrent with the state courts, of all suits of a civil nature, at common law or in equity, of a certain value, and the United States are plaintiffs, or an alien is a party, or the suit is between a citizen of the state where the suit is brought, and a citizen of another state. Cognizance in certain criminal cases is also conferred on the circuit court by this section, as well as in cases of appeals from the district courts respectively. It will be observed that this section bestows upon the circuit courts original jurisdiction only in civil suits at common law, and in equity, where the value in dispute exceeds the sum or value of $500, and where the parties to the suit are the United States, aliens, or citizens of different states. Cognizance of cases arising under the constitution, laws of the United States, or treaties, is not assigned by the act to either of the courts which it establishes; and, consequently, neither of them could take jurisdiction in those cases, since the article of the constitution, above recited, leaves to congress the distribution of the judicial powers, not assigned to the supreme court, amongst the inferior courts which that body might ordain. The power therefore not bestowed upon those courts by legislative provision, remained dormant, until some law should call them into action, by designating the particular tribunal which should be authorised to exercise them. Jurisdiction in cases arising under the constitution, laws of the United States, and treaties, is not limited by the above article either as to sum, or by the citizenship of the parties to the suit, but is independent of those restrictions, unless congress should impose them. Thus, if an act of congress should provide that all cases in law and equity arising under the constitution, laws of the United States, and treaties, should be heard and decided by the circuit, or district courts, without any qualification whatever; there could be no doubt in my mind that the court, to which this jurisdiction should be so assigned, might exercise it, though the plaintiff and defendant should be citizens of the same state, and let the sum in controversy be what it might. But congress might grant to those courts only a part of the general jurisdiction in those cases, by limiting it to a certain sum, or description of suitors, reserving the residue for future distribution, if it should so please that body to make the grant.

It follows from what has been said, that when cognizance of cases arising under a law of the United States, is given to the circuit court without limitation, as it is in patent and copyright cases; the value in dispute, and the citizenship of the suitors, have nothing to do with the jurisdiction of the court. That this is a case arising under a law or laws of the United States, is unquestionable. It never could have arisen, if the legislature, in the exercise of its constitutional authority, had not incorporated the Bank of the United States.

The jurisdiction of this court over the case, is given by that section of the law of incorporation, which authorizes the corporate body to sue and be sued, &c., in all state courts having competent jurisdiction, and in any circuit court of the United States. I have thus endeavoured, in as few words as possible, to express, what is much better expressed by the circuit court of Kentucky in the case of this Bank of U. S. v. Roberts, [Case No. 934.] In giving this opinion upon the question of jurisdiction so arising in this case, I refer with great satisfaction to the opinion in that case upon this subject, for the purpose of declaring my entire concurrence. Judgment for plaintiffs.

---

## Case No. 932.
### BANK OF THE UNITED STATES v. O'NEALE.
[2 Cranch, C. C. 466.][1]
Circuit Court, District of Columbia. April Term, 1824.

NEGOTIABLE INSTRUMENTS —PLACE OF PAYMENT— DEMAND—DISHONOR.

If a note is payable at a bank, it is a sufficient demand of payment of the maker, if the holder,

[1] [Reported by Hon. William Cranch, Chief Judge.]

on the last day of grace, demands payment at the bank; and the note is dishonored if the maker has no funds there to pay it.

[See Bank of Metropolis v. Brent, Case No. 900; Brent v. Bank of Metropolis, 1 Pet. (26 U. S.) 89.]

At law. Assumpsit [by the Bank of the United States] against [William O'Neale] the indorser of Benjamin G. Orr's promissory note for $7,660, due 26–29 May, 1821.

A verdict was taken for the plaintiffs, subject to the opinion of the court, upon a case which stated that the note and signature of the parties was admitted; that Michael Nourse, a notary public, on the 29th of May, 1821, (the last day of grace,) at the request of the plaintiffs, presented at their office of discount and deposit in Washington, where the note was made payable, the original promissory note, and there demanded payment of the sum of money therein specified, whereunto the teller replied, that he had no funds, and that on the 30th of May, 1821, he gave notice personally to the defendant, that the said note had been protested for non-payment, and that he was held liable by the plaintiffs for the payment of the same; that, on the 29th of May, 1821, Samuel J. Potts, the plaintiffs' book-keeper at their said office of discount and deposit examined the account of the said Benjamin G. Orr, on the books of the said office on that day, and found no funds at his credit, but his account overdrawn. And it was agreed that the note was discounted for the maker, at the plaintiffs' said office, on the day of its date, and was then delivered to them by the maker, indorsed by the defendant.

Upon the case thus stated, THE COURT rendered judgment for the plaintiffs.

---

## Case No. 933.

BANK OF THE UNITED STATES v. PETER.

[5 Cranch, C. C. 485.] [1]

Circuit Court, District of Columbia. Nov. Term, 1838.

DECEASED DEBTOR — SALE OF REAL ESTATE TO PAY DEBTS — RENTS AND PROFITS — RIGHTS OF HEIRS.

The only cases in which the court has permitted the heirs of a deceased debtor to have the rents and profits until the sale of real estate sold to pay the debts of the ancestor, are cases of sale under the act of Maryland for deficiency of personal assets.

[See Kurtz v. Hollingshead, Case No. 7,953; Ritchie v. Bank of U. S., Id. 11,863.]

[Suit between the Bank of the United States and the heirs of David Peter.]

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Marbury, for the defendants, the heirs of David Peter, moved the court to order the interest of the proceeds of the sales of the lands and lots to be paid to the heirs, because if they had not been sold, they would have been entitled to receive the rents and profits until a sale under the will of David Peter. There had been an agreement that the property should be sold, and the proceeds stand in the place of the land; but no reservation was made of the interest for the benefit of the heirs.

THE COURT, however, (THRUSTON, Circuit Judge, absent,) refused; and said, the only cases in which the court had permitted the heirs to have the rents and profits until sale, were cases of sale under the act of assembly of Maryland of 1785, c. 72, for deficiency of personal assets.

---

BANK OF THE UNITED STATES, (RITCHIE v.) See Case No. 11,863.

---

## Case No. 934.

BANK OF THE UNITED STATES v. ROBERTS et al.

[4 Conn. 323.]

Circuit Court, D. Kentucky. 1822.

CONSTITUTIONAL LAW — JUDICIAL POWER OF THE UNITED STATES — JURISDICTION OF CIRCUIT COURTS — PRACTICE — BANK OF THE UNITED STATES.

[1. By the usages of this country and the rules of practice in the federal courts in Kentucky, it is not necessary in any case that a party should make out a warrant of attorney authorizing an attorney to appear for him, and in such courts a corporation may sue under its corporate style and character, and not by attorney.]

[2. The judicial power of the United States extends to two classes of cases: (1) Those in which the supreme court has original jurisdiction; (2) those in which it has only appellate jurisdiction. In cases of the second class the federal jurisdiction is dormant until its exercise is authorized by congress, and a circuit court can have no jurisdiction in such cases except as it is expressly granted by congress.]

[3. The provision of the constitution giving congress power to establish inferior courts, necessarily confers power to give to such inferior courts jurisdiction in all cases to which the judicial power of the United States extends, and as to which original jurisdiction is not given to the supreme court by the constitution.]

[4. The provision of the act incorporating the Bank of the United States, giving it power to sue and be sued, etc., in any state court of competent jurisdiction, or in any circuit court of the United States, authorizes the bank to sue and be sued in a federal circuit court in every case, and should not be construed so as to limit such power to cases wherein circuit courts have jurisdiction only by virtue of the judiciary act.]

[Cited in Bank of U. S. v. Northumberland Bank, Case No. 931.]

[5. Where the judiciary act is in conflict with the act incorporating the Bank of the United